IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GREAT AMERICAN ALLIANCE INSURANCE
COMPANY, GREAT AMERICAN
ASSURANCE COMPANY, and GREAT
AMERICAN INSURANCE COMPANY OF
NEW YORK,

        Plaintiffs,

v.

HWRT OIL COMPANY, LLC,

        Defendant.

Case No. _____

**COMPLAINT FOR DECLARATORY JUDGMENT**

      Plaintiffs, GREAT AMERICAN ALLIANCE INSURANCE COMPANY ("Great American Alliance"), GREAT AMERICAN ASSURANCE COMPANY ("Great American Assurance") and GREAT AMERICAN INSURANCE COMPANY OF NEW YORK ("Great American NY") (collectively, Great American Alliance, Great American Assurance and Great American NY are referred to herein as "Great American"), by and through their attorneys, Buckley & Buckley, L.L.C., for their Complaint for Declaratory Judgment against Defendant, HWRT OIL COMPANY, LLC ("HWRT"), pursuant to 28 U.S.C. §§ 2201 and 2202, state as follows:

**NATURE OF ACTION**

      1.    Great American seeks a declaratory judgment from this Court, pursuant to 28 U.S.C. §§ 2201 and 2202, that Great American has no duty to defend, indemnify or otherwise provide coverage to HWRT for the matters alleged in two underlying lawsuits captioned *Crocker v. Don Heil Oil Company, Inc., et al.*, Case No. 15SG-CC00240-01 (the "*Crocker* Lawsuit") and

1703158v3

*Kuehn v. Don Heil Oil Company, Inc., et al.*, Case No. 15SG-CC00219-01 (the "*Kuehn* Lawsuit"), both of which were filed in the 24th Judicial Circuit Court, St. Francois County, MO (collectively referred to herein as the "Underlying Lawsuits").

## THE PARTIES

2. Plaintiff, Great American Alliance, formerly known as American Alliance Insurance Company ("American Alliance"), is an Ohio corporation with its principal place of business located in the State of Ohio.

3. Plaintiff, Great American Assurance, formerly known as Agricultural Insurance Company ("Agricultural"), is an Ohio corporation with its principal place of business located in the State of Ohio.

4. Plaintiff, Great American NY, is a New York corporation with its principal place of business located in the State of Ohio.

5. Defendant, HWRT, is an Illinois limited liability corporation, whose sole managing member is HWRT Management, LLC ("HWRT Management"). HWRT Management is an Illinois limited liability corporation, whose members are all citizens of the State of Illinois, and, as such, Defendant HWRT is a citizen of Illinois within the meaning of 28 U.S.C § 1332(a).

## JURISDICTION AND VENUE

6. Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1332(a), because the Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest because the primary limit of the primary policies at issue is $1,000,000.

7. Venue is also proper in this District, pursuant to 28 U.S.C. § 1391(c), because the Defendant is subject to personal jurisdiction in this District.

## THE UNDERLYING LAWSUITS

8.  The plaintiffs in the Underlying Lawsuits allege that they were exposed to and inhaled "toxic fumes" while working at a mine that was owned and/or operated by Mississippi Lime Company ("Mississippi Lime"), located in Sainte Genevieve County, Missouri.

9.  The petitions in the Underlying Lawsuits further allege that, during the course of their respective employments at Mississippi Lime, the underlying plaintiffs were regularly exposed to and inhaled "toxic fumes" and "toxic fumes' constituent components" generated by diesel fuel burned in the equipment, generators and other items used in the mines.

10. The petitions in each of the Underlying Lawsuits define "toxic fumes" to mean vapors, gases and fine particles emitted by diesel-fueled compression-ignition engines, as well as diesel exhaust, diesel exhaust particles, and diesel particulate matter.

11. The petitions in each of the Underlying Lawsuits further define "toxic fumes' constituent components" to mean the components in toxic fumes, including, but not limited to, the following "compounds and chemicals in gaseous and/or particulate forms: aldehydes (including but not limited to formaldehyde, acetaldehyde, and acrolein), benzene, 1,3-butadiene, polycyclic aromatic hydrocarbons, nitro-polycyclic aromatic hydrocarbons, dioxin, barium, chlorine, chromium, copper, iron, lead, manganese, mercury, nickel, phosphorous, silicon and zinc."

12. According to the allegations of the Underlying Lawsuits, the diesel fuel which created and emitted the "toxic fumes" was made, sold and/or distributed by the defendants, who knew or should have known that workers, such as plaintiffs, would be exposed to exhaust and fumes from the product as it burned.

1703158v3

13. The plaintiffs in the Underlying Lawsuits seek damages for injuries that they allegedly sustained as a result of the defendants' act or omissions.

14. HWRT Oil Company, LLC is a named defendant in the Underlying Lawsuits and it, along with all other defendants, is being sued in connection with "…the wrongful acts or omissions described in this petition and for which defendants are liable under Missouri law."

## THE GREAT AMERICAN POLICIES

15. American Alliance and Great American NY respectively issued the following primary insurance policies (the "Primary Policies"):

| Issuing Company | Policy Number | Policy Period |
|---|---|---|
| American Alliance | PAC 3-53-87-85-00 | 6/30/99-6/30/00 |
| American Alliance | PAC 3-53-87-85-01 | 6/30/00-6/30/01 |
| Great American NY | PAC 3-53-87-85-02 | 6/30/01-6/30/02 |

16. American Alliance issued the following umbrella insurance policies (the "Umbrella Policies"):

| Issuing Company | Policy Number | Policy Period |
|---|---|---|
| American Alliance | UMB 3-53-87-88-00 | 6/30/99-6/30/00 |
| American Alliance | UMB 3-53-87-88-01 | 6/30/00-6/30/01 |

17. American Alliance and Agricultural respectively issued the following excess insurance policies (the "Excess Policies"):

| Issuing Company | Policy Number | Policy Period |
|---|---|---|
| Agricultural | EXC-7-30-54-35-00 | 6/30/92-6/30/93 |
| American Alliance | EXC-794-67-80-00 | 6/30/93-6/30/94 |
| American Alliance | EXC-763-73-90-00 | 6/30/94-6/30/95 |
| American Alliance | EXC-8816301-00 | 6/30/95-6/30/96 |
| American Alliance | EXC-8799689-00 | 6/30/96-6/30/97 |
| American Alliance | EXC-5748330 | 6/30/01-6/30/02 |

18. The Primary Policies, the Umbrella Policies and the Excess Policies are collectively referred to herein as the "Great American Policies."

19. The "Named Insured" identified on the Declaration Page of each of the Great American Policies is "Piasa Motor Fuels, Inc."

20. Each of the Great American Policies contains a Named Insured Endorsement, Broadened Named Insured Endorsement and/or other provisions identifying entities that qualify as Named Insureds or insureds under the Great American Policies.

21. HWRT is not listed or identified as a Named Insured or insured under the Great American Policies.

22. HWRT does not qualify as a Named Insured or insured under the Great American Policies.

23. Each of the Great American Policies contains various exclusions to coverage, including, but not limited to, some form of an absolute pollution exclusion, which bars coverage for any injury or damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

## COUNT I
### (Declaratory Judgment - Named Insured)

24. Great American incorporates by reference the allegations of Paragraphs 1 through 23 above as though fully set forth herein.

25. HWRT was first formed as an Illinois limited liability corporation on or about December 4, 2003.

26. HWRT came into existence as an Illinois limited liability corporation only after the policy periods of the Great American Policies had already expired.

27. HWRT is not listed or identified as a Named Insured or insured under any of the Great American Policies.

1703158v3

28. HWRT does not qualify as a Named Insured or insured under the terms, endorsements and/or any other provisions of the Great American Policies.

29. Great American and HWRT have an actual, live dispute as to whether HWRT qualifies as a Named Insured or insured under the Great American Policies.

30. The issuance of declaratory relief from this Court will terminate some or all of the existing disputes and controversies between the parties.

WHEREFORE, for the reasons set forth above, Plaintiffs, GREAT AMERICAN ALLIANCE INSURANCE COMPANY, GREAT AMERICAN ASSURANCE COMPANY and GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, pray for judgment as follows:

    a. Declaring that HWRT is not a Named Insured or insured under the Great American Policies and is not otherwise entitled to coverage from Great American with respect to the Underlying Lawsuits;

    b. Declaring that Great American has no obligation to provide coverage, defense, reimburse defense costs, or indemnify HWRT with respect to the Underlying Lawsuits; and

    c. Awarding such other and further relief as the Court deems just, equitable and proper.

## COUNT II
### (Declaratory Judgment - Absolute Pollution Exclusion)

31. Great American incorporates by reference the allegations of Paragraphs 1 through 23 above as though fully set forth herein.

32. The Great American Policies each contain an absolute pollution exclusion, which bars coverage for damages or injuries arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

33. The plaintiffs in the Underlying Lawsuits allege injuries caused by exposure to "toxic fumes" and "toxic fumes' constituent components" generated by the burning of diesel fuel which was made, distributed and/or sold by HWRT and other defendants named in the Underlying Lawsuits.

34. The "toxic fumes" and "toxic fumes' constituent components" as alleged in the complaints in the Underlying Lawsuits constitutes "pollutants" within the meaning of the Great American Policies.

35. Coverage for the Underlying Lawsuits is barred by the absolute pollution exclusions contained the Great American Policies.

36. Great American and HWRT have an actual, live dispute as to whether coverage is barred by the absolute pollution exclusions contained in the Great American Policies.

37. The issuance of declaratory relief from this Court will terminate some or all of the existing disputes and controversies between the parties.

WHEREFORE, for the reasons set forth above, Plaintiffs, GREAT AMERICAN ALLIANCE INSURANCE COMPANY, GREAT AMERICAN ASSURANCE COMPANY and GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, pray for judgment as follows:

    a. Declaring that the absolute pollution exclusions contained in the Great American Policies preclude any and all coverage for HWRT with respect to the Underlying Lawsuits;

1703158v3

      b.     Declaring that Great American has no obligation to provide coverage, defense, reimburse defense costs, or indemnify HWRT with respect to the Underlying Lawsuits; and

      c.     Awarding such other and further relief as the Court deems just, equitable and proper.

## COUNT III
### (Declaratory Judgment – Other Policy Defenses)

38. Great American incorporates by reference the allegations of Paragraphs 1 through 23 above as if fully set forth herein.

39. In the event that coverage is not barred by Counts I-II, coverage is nonetheless barred by various other defenses.

40. Specifically, Great American requests that this Court determine and declare that Great American has no, and never had any, obligation under the Great American Policies or otherwise, to defend or indemnify HWRT or any other alleged insured in connection with the Underlying Lawsuits based on one or more of the following grounds:

      (a)     The Great American Policies do not provide coverage to the extent that any alleged injury or damage which forms the basis of the Underlying Lawsuits was not caused by or did not arise out of an "occurrence" within the meaning of the Policies and/or any applicable controlling underlying insurance policies to which any Excess Policies follow form;

      (b)     There is no coverage under the Great American Policies for injury or damage that was expected or intended from the standpoint of the insured or that was caused intentionally by or at the direction of an insured;

(c) The Great American Policies do not provide coverage for conduct which is in violation of law or public policy;

(d) There is no coverage under the Great American Policies for any injury or damage that occurred prior to the inception date or after the expiration date of the Policies;

(e) The Great American Policies do not provide coverage to the extent that the claims arose from risks or losses known to the insured prior to the dates the Policies incepted;

(f) The Great American Policies do not provide coverage to the extent the acts, conditions, events and damages alleged in the Underlying Lawsuits or which form the basis of the claims against the insured were not fortuitous;

(g) The Great American Policies do not provide coverage for fines, penalties, punitive or exemplary damages, or any criminal or malicious acts or omissions of any insured, acting through its servants, agents or employees;

(h) To the extent that any insured misrepresented or failed to disclose material facts when it applied for the Great American Policies, Great American will seek to rescind the Policies;

(i) The Great American Policies do not provide coverage for sums incurred as a result of any insured's failure to mitigate any alleged damages;

(j) There is no coverage under the Great American Policies to the extent that any insured made any voluntary payment and/or assumed any obligation,

1703158v3

incurred any expense or made any payment that it was not legally obligated to pay;

(k) The Great American Policies do not provide coverage to the extent that any insured failed to timely notify Great American of any occurrence, claim or suit and/or to forward every claim or suit or advise of any other developments likely to affect Great American's liability in a timely manner as required by the Policies and/or any applicable controlling underlying insurance policies to which any of the Excess Policies follow form;

(l) To the extent the insured has failed to perform all of its obligations and duties and/or comply with all conditions precedent and subsequent under the Great American Policies and/or any applicable controlling underlying insurance policies to which the Excess Policies follow form, coverage, if any, is barred;

(m) The Great American Policies do not provide coverage to the extent that any costs associated with the Underlying Lawsuits have not yet been incurred;

(n) The Great American Policies do not provide coverage to the extent that any insured's obligation to pay any sums related to the Underlying Lawsuits has not been finally determined by judgment or settlement;

(o) The Great American Policies do not provide coverage to the extent that other insurance is available to cover the Underlying Lawsuits;

(p) The terms and conditions of the Umbrella and Excess Policies preclude any duty to defend or any obligation reimburse defense costs for the Underlying Lawsuits;

(q) No coverage obligations arise under the Umbrella and Excess Policies unless and until any and all applicable underlying limits of liability and/or any retained limits have been properly and completely exhausted;

(r) The Umbrella and Excess Policies do not provide coverage in place of underlying or other insurance which is or becomes invalid, uncollectible, or otherwise unavailable due to the insolvency of the underlying insurer or as a result of the acts of the insured;

(s) Great American's liability, if any, is limited to the amount described in the limits of liability provisions of the Great American Policies and the Policies only provide coverage up to each policy's stated per "occurrence" and aggregate limits of liability;

(t) Great American's liability, if any, under the Great American Policies for claims arising out of continuous or repeated exposure to substantially the same general conditions, and all damages involving the same injurious material or act, is limited to liability for one "occurrence" as that term is defined in said Policies and/or any applicable controlling underlying insurance policies to which any of the Excess Policies follow form. Further, any coverage provided under the Great American Policies is subject to each Policy's stated per "occurrence" limits, aggregate limits and all other limits of liability;

11

(u) To the extent that any coverage obligations arise under the Great American Policies, such obligations are subject to any applicable self-insured retentions or deductibles or other premium arrangements and/or the operation of any non-cumulation clauses contained therein; and

(v) To the extent that any coverage obligations arise under the Great American Policies, Great American reserves the right to seek the participation of any party, including any insured, toward any defense and/or indemnity.

WHEREFORE, for the reasons set forth above, Plaintiffs, GREAT AMERICAN ALLIANCE INSURANCE COMPANY, GREAT AMERICAN ASSURANCE COMPANY and GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, pray for judgment as follows:

a. Declaring that HWRT is not entitled to coverage under the Great American Policies for the Underlying Lawsuits;

b. Declaring that Great American has no obligation to provide coverage, defense, reimburse defense costs, or indemnify HWRT with respect to the Underlying Lawsuits; and

c. Awarding such other and further relief as the Court deems just, equitable and proper.

Dated: November 21, 2016

        Respectfully submitted,

        GREAT AMERICAN ALLIANCE INSURANCE COMPANY, GREAT AMERICAN ASSURANCE COMPANY, and GREAT AMERICAN INSURANCE COMPANY OF NEW YORK

        By:   s:/ Martin J. Buckley
             One of Their Attorneys

Martin J. Buckley  #MO 37000
**BUCKLEY & BUCKLEY, L.L.C.**
1139 Olive Street, Suite 800
St. Louis, MO 63101-1928
Tel:     314.621.3434
Fax:     314.621.3485
mbuckley@buckleylawllc.com

13

1703158v3